**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**BEAUTY REACTIONS, LLC,**

**Plaintiffs,**

**v.**

**ORACLE AMERICA, INC, et al,**

**Defendants.**

**CIVIL ACTION NUMBER:**

**3:18-cv-09222-BRM-TJB**

**ORAL ARGUMENT**

Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608
August 23, 2018
Commencing at 10:19 a.m.

**B E F O R E:** **THE HONORABLE BRIAN R. MARTINOTTI, UNITED STATES DISTRICT JUDGE**

**A P P E A R A N C E S:**

ROBBINS & ROBBINS
BY: SPENCER B. ROBBINS, ESQUIRE
568 Amboy Avenue
Woodbridge, NJ 07095
For the Plaintiff

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
BY: ROBERT S. FRIEDMAN, ESQUIRE
30 Rockefeller Plaza
New York, NY 10112
For the Defendant

Certified as true and correct as required by Title 28 U.S.C. Section 753
*/S/ MEGAN MCKAY-SOULE, RMR, CRR*

Megan McKay-Soule, Official Court Reporter
megansoule430@gmail.com
(215) 779-6437

THE DEPUTY COURT CLERK: All rise.

(Open court begins at 10:19 a.m.)

THE COURT: Welcome, counsel. Good morning. Your appearances for the record, please.

MR. ROBBINS: Spencer Robbins of Robbins & Robbins representing the plaintiff, Beauty Reactions.

MR. FRIEDMAN: Robert Friedman, Sheppard, Mullin, Richter & Hampton, LLP for defendants. Good morning, Your Honor.

THE COURT: Good morning. Okay. Thank you. You can be seated.

I have read all the papers. I'm going to give a little overview and then I'll hear some arguments from counsel.

Before this Court is defendant Oracle America, Inc. and NetSuite, Inc.'s -- I'm going to refer to them collectively as defendants -- motion to dismiss plaintiff Beauty Reactions L.L.C.'s complaint for, 1, failure to abide by contractual conditions precedent; or, 2, to transfer venue pursuant to 28 U.S.C. 1404; or, 3, to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

The motion, Document No. 5, was filed on May 21st, 2018. On 5 June 2018, the plaintiff filed a certification in opposition, Docket No. 7. Despite defendant's assertion that the certification is defective and should be disregarded, the Court has considered same.

Defendant replied on 11 June 2018, Document No. 9. At that time the matter was fully briefed, and on 19 July 2018 the court scheduled oral argument.

As an initial matter, this Court finds it does have jurisdiction. Defendants are corporations, and as defendant points out in their brief, all that is relevant is their state of incorporation and principal places of business, 28 U.S.C. 1332 (c)(1), "Deeming a corporation to be a citizen of the state by which it has been incorporated and/or the state or foreign state in which it has principal place of business."

Plaintiffs referenced Oracle doing business in New Jersey. As defendant argues, and the Court agrees, is closer to an argument that the Court can exercise general or specific jurisdiction over Oracle, which is not the subject of Oracle's motion. Nevertheless, because defendants are not citizens of New Jersey under 28 U.S.C. 1332, plaintiff, a citizen of New Jersey under that statute, the parties are citizens of different states and therefore there is diversity.

As defendant argues, plaintiff's contention that the amount in dispute is $75,000 is erroneous. Defendant correctly points out 28 U.S.C. 1332(a), which states that, quote, "District courts shall have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000." Citing to *Venuto*, V-E-N-U-T-O, v. *Atlantis Motor Group, L.L.C., No. CV173363RBKKMW, 2017 Westlaw*

*4570283 at 2, District of New Jersey, October 2017.*

Plaintiff's complaint asserts four causes of actions against defendants. Specifically, 1. Breach of contract. 2. Fraud. 3. Violation of the New Jersey Consumer Fraud Act. 4. Breach of warranty of merchantability. The complaint, as defendant argues, is devoid of any allegations as to specific amount or amounts in damages associated with those claims and certainly does not claim that the amount sought is less than the jurisdictional minimum. "Because the complaint is silent or ambiguous as to one or more of the ingredients needed to calculate the amount of controversy, the defendant's notice of removal serves the same function as the complaint would if the suit was filed in federal court." *Frederico v. Home Depot, 507 F.3d 188, 3d Cir. 2007.*

The Court finds that the facts are relatively straight forward. Plaintiff's business involves the sale of various beauty products, including hair dryers, curlers, liquid products and other products to certain companies. Since the beginning of the business it has been using several computer programs. It came to a point that it sought to increase the abilities of its computers. Mr. Mayo, principal of the company, interviewed several companies, including meeting with individuals from NetSuite. Plaintiff agreed to utilize the services, thinking he was getting, quote, "the Silver support status." Defendant states that they entered into a

Subscription Services Agreement, hereinafter referred to as SSA, dated April 27, 2017, under which defendants offered the plaintiff a subscription service for certain NetSuite1 business application software in return for certain defined fees.

Section 5 of the SSA titled Terms of Service, hereinafter referred to as TOS, expressly incorporates the term of service as the term of an SSA, citing to Friedman declaration, which is Exhibit A, Section 5, Term of Service. The customer acknowledges and agrees and has read and understands and agrees to be bound by the main terms of service.

The cost of the program was $631,000, approximately. There was an agreed upon discount of $372,000, approximately. Therefore, the cost would be approximately $258,000.

There are additional costs for certain hardware that the plaintiff was required to purchase for the software to operate. Mr. Mayo contends there were many representations about the programs and the services. Plaintiff admits that an agreement was entered into. There was an initial payment of $55,436.23. In addition, plaintiff spent another 19,000 to purchase hardware.

Ultimately, the program did not meet plaintiff's expectations. An inquiry was made on how to cancel the contract, which ultimately led to plaintiff filing a lawsuit

in Middlesex County, removed to this court.

The defendant then moved for the relief set forth previously by the Court on the record.

Counsel, this is your application. I'll hear you, but the question I have is if I were to grant one of your alternatives, does that then moot the remainder of the alternatives? Wherever you're comfortable, counselor.

MR. FRIEDMAN: Thank you, Your Honor.

So if I understand your question correctly, Your Honor, if you grant the 1404 motion, should you address the 12(b)(6) motion?

THE COURT: Right.

MR. FRIEDMAN: Yes. Okay.

That is within Your Honor's discretion. I believe at this point that the proper -- the proper procedural mechanism would be to transfer first, and then we would be litigating this in California and submit the motion to dismiss under 12(b)(6).

THE COURT: How about the clause requiring, I guess, a conference, the mediation?

MR. FRIEDMAN: The mediation, yes. Well, that would come before anything, and I agree with you. If you were to grant the motion to dismiss and dismiss this case because the prerequisite was not met, then I believe that that would be first, the transfer would be second, and the 12(b)(6) would be

third, if we had to view it in a linear fashion.

THE COURT: Okay.

MR. FRIEDMAN: I do -- you do have discretion now that you've exercised jurisdiction to grant the 12(b)(6) motion as well. And it would seem to me the most -- that would be the most logical progression.

THE COURT: So talk to me about the failure to follow the dispute resolution contained in the TOS incorporated into the Subscription Services Agreement.

MR. FRIEDMAN: Yes. So the TOS was not an executed document, but as Your Honor identified, under Section 5 it is specifically incorporated. There is a mandatory mediation provision in the Terms of Service.

THE COURT: It's actually before you even get to mediation, there's an obligation to try to resolve it among yourselves.

MR. FRIEDMAN: Yes. Now, the reason I'm focusing on mediation is there is -- I believe there is -- we have not been able to find the same certainty in the authority with respect to the more informal dispute resolution, so a meeting of executives, as is typical in these contracts. So, for example, if the parties have to sit down, escalate it, discuss it, those are common in these kind of contracts. There is not the same authority with respect to the mandatory nature of that. So that's why we've really focused more on the

mediation aspect, because as the Court knows, there is a -- a deference to alternate dispute resolution and that is a prerequisite. The cases that we've cited, mainly the one from Florida, for example, which are persuasive authority, have dismissed cases in these similar situations.

THE COURT: I'll hear your argument.

MR. FRIEDMAN: Yeah. So that is -- our argument is essentially the -- based upon the authority that we cite, including the 3-J Hospital case and the language in the Terms of Service specifically incorporated, very simply there was a -- there was an alternative dispute resolution that the parties have agreed to prior to the initiation of any lawsuit. There is not an arbitration provision, but there is a mediation provision, and the authority that we cited, including 3-J Hospital case, treat those the same. This is a prerequisite that should have been instituted prior to the initiation of any lawsuit.

THE COURT: Okay. Let me hear from plaintiff's counsel. Talk to me about the contract that incorporates the TOS.

MR. ROBBINS: Your Honor, this jumps off with a simple idea of trying to redress the damage that's been done to my client. He enters into a contract without counsel with regard to it, and the terms -- or the print in which the redress is outlined is so small it's difficult to read and

hard to even understand.

He entered into the contract with regard to it based upon a number of things that they had requested, meaning they had not only expectations because they already had computer programs, they already had a few things, so they wanted to upgrade it. So now the idea was to get something sophisticated that can run his business and a number of businesses that he had.

He has a number of staff, in fact, that have come today with regard to it to go over any issues. But not only couldn't they do what they said they could do, they've also then, after going through a number of different things, meaning going back and forth over a six-month period of time to try to get everything, they couldn't even do the simplest thing of even writing a check and keeping inventory on this computer program that was supposed to be as sophisticated as anything that's ever been existing.

There have been communications back and forth that it just doesn't work, and they agreed that it didn't work. The final portion of the redress that they were seeking, they went back to the individuals who are located I think mostly in Massachusetts, not in California, stated that there is no refund policy, there's nothing that we can do and we can't get to there. As they say -- what's the expression? The dog won't hunt. He can't get it to work.

So they've tried to figure out what it is. There's correspondence going back, e-mails with regard to it with Miss Bantassel suggesting that, you know, is there something? There's nothing that can get them there even for the basic things of keeping inventory, which is substantial for them, and writing checks. So as a result of that, we commenced suit.

We tried to find out what's the refund policy, we tried to find out. They said there isn't anything with regard to it. There was nothing mentioned that they could do anything more. They've, in fact, monitored the programs that they have forwarded to show that we have not used them, aren't able to use them. And so the idea landed that there is a contract, but nobody was aware at the time that there would be a limitation as to where the suit could be brought or how the procedure would have been.

So the case was started in state court in Middlesex because they're located there and because the -- Oracle does have five offices located here. Am I aware of what their profit making or what they can do or where they are? No, but I represent some Oracle employees that are here so I know that they're in New Jersey.

So that was what we sought to do. The matter -- I think the total amount -- we paid 55. The contract was for 200 and something thousand. We paid another 20, $30,000 for

equipment, so we seek redress. The idea is that we --

THE COURT: Not relevant to the motion presently before the Court, what's the status of the contract? Have payments still been made? Did they stop paying?

MR. FRIEDMAN: No. They paid the 55,000, they paid for the equipment. Nothing further happened. No request for any money was even made by Oracle or NetSuite. So there's not a demand that you owe us money that we're going to do this. We filed the suit because we asked for the refund policy, we asked what they're going to do with regard to it, and they couldn't fix it, couldn't make us the programs that they said they would. And so they've done nothing with regard to it.

So approximately six, eight months go by without any communication from them, no demand from them, and so I commenced a lawsuit with regard to it because it was clear that there was no refund policy, nothing to suggest that we have a meeting to try to get the money back or where it's going to go. So my redress was to file suit.

THE COURT: Understood. But you acknowledge that the contract -- and I heard what you said earlier, unrepresented, signs a contract.

MR. ROBBINS: Yes. So I think that the language with regard to it, to have the matter heard in California when everybody is here in New Jersey. This is a forum non conveniens argument also because nobody in California is aware

of this contract or did anything with the contract. The people that came down and worked on the contract were from Massachusetts or New Jersey. They weren't from California. Payments weren't made, I don't think, to California. It was made, in fact, to New Jersey and Massachusetts. So that's why we commenced the action here.

The amount of money that we were seeking with regard to it with all -- everything was just above the amount, so that's why I filed it in the state court because I believed that would be the proper address because I didn't think there was diversity of citizenship. I understand the corporation is in California, its main headquarters, but they seem to operate in every state. And if you even Google them, there are five offices here in New Jersey. So --

THE COURT: Well, I think that gets more into jurisdiction rather than citizenship.

MR. ROBBINS: Uh-huh.

THE COURT: So that's an issue, and the Court has already determined that this Court does have jurisdiction.

Talk to me about the forum selection clause.

MR. ROBBINS: Well, they have suggested or they have laid out in their contract that it would be in San Jose, California. That's, I gather, where their corporate headquarters are or that's where the county would be. It's, first of all, not convenient because all the witnesses for

Beauty Reactions would be here in New Jersey. The witnesses that they would have for their part would either come out of Massachusetts or New Jersey. I'm not sure of who the people -- who worked on it. They came to their offices. The equipment that they purchased was through New Jersey and so everything is here in New Jersey. So to make everybody go to California wouldn't be, one, convenient and wouldn't be, I think, proper in that sense.

I understand that they wrote the contract. It shouldn't be held against them with regard to it. As I said, it's not convenient for us to bring the case in California because of that. We think that there should be some redress with regard to it. We were happy to conference, but there's nobody that was considering conferencing, so I filed the suit after all the e-mails went back and forth between the parties.

THE COURT: Okay.

Anything further?

MR. ROBBINS: We are seeking a simple resolution. They haven't done anything. They checked with regard to it. We're out the money. We can't use the system. We wanted to get back to whatever it is for the equipment and we didn't get anything for it. But this was based upon representations that they made to Mr. Mayo and Miss Bantassel that they could do all these different things and they couldn't even do the minor things which QuickBooks could do. So we need to figure out a

forum in which to do it, and we think we're entitled to do that. We think it should be in New Jersey, be it in federal court. We're happy to do whatever it is, but we want that opportunity.

THE COURT: Okay. Thank you.

Counsel.

MR. FRIEDMAN: Yes. Thank you, Your Honor.

Just a few factual responses. There have been invoices that are unpaid and outstanding, in response to Your Honor's questions, in the amount of 81,310.15. There are also invoices that are -- that are unbilled, but due, of 206,991.27.

THE COURT: Was there acceleration clause in the --

MR. FRIEDMAN: There's no acceleration clause, but there's no termination clause for convenience either. So once those are billed, those will be due as well.

But there is an outstanding amount of over $81,000.

What this comes down to, and without -- I don't think it's that relevant at this point for this part of the -- of today to get into the facts. But this is about a vendor prepayment application. What was provided pursuant to all of the discussions, pursuant to the contract, and pursuant to the estimation, was a whole suite of products for their ERP for three different businesses.

Once it was provided, there was a supplemental request

for a vendor prepayment, for whatever reason, which is a completely separate application.

Once that happened in the August/September of 2017 time period, the folks from Oracle said, sure, we will add that. And they started discussions with the Beauty Reactions folks to demo it, to provide it, to -- to correct whatever issues with respect to their requirements. This was not discussed, at least in our view, and I know that might be disputed at any point. I take issue with the fact that there was -- there was no communication. There was communication from the Oracle folks from September through December of 2017 trying to demo, trying to say, hey, do you guys want this new application, this vendor prepayment so that we can meet your needs? There was no response. They just wanted -- there was, frankly, no response on the other end.

So I started -- your initial question for me, Your Honor, was with respect to the mediation requirement. And I believe Mr. Robbins was trying to address that by saying that it was, I guess, futile because we had ignored them. And that just isn't the case. You know, more important for Your Honor's decision here is there's nothing in the record with respect to that not being the case.

But I just wanted to correct the record that there was an effort made, a substantial effort by the Oracle folks to -- to provide this additional program that would have solved what

our perceived -- what Oracle's perceived issues are.

With respect to the transfer motion, as Your Honor knows, both the Supreme Court and the Third Circuit have mandated that when commercial parties such as this, sophisticated commercial parties sign a contract, unless there's something highly unusual, the burden is on the person who is trying to get out of the contract to demonstrate unconscionability. They should be enforced as a matter of course. There's a high presumption that they should be enforced as a matter of course. And here, not only do we have no evidence with respect to unconscionability, we have quite the opposite. We have a party who negotiated a commercial contract who is a sophisticated company led by sophisticated individuals. In the certification from Mr. Mayo, he says, I have three businesses. I have other businesses. This was supposed to integrate all of my businesses.

He goes beyond that and says, I actually did what would be akin to a request for proposal process. He interviewed several different providers and vendors. He then did a selection process. The company went through a selection and chose. The fact that he didn't have counsel, I mean, this is a very short document. This is actually not in the Terms of Service with respect to the venue selection. This is in the actual contract signed by Mr. Mayo, which is only a few pages, and it's mandatory to -- it's mandatory with respect to both

venue and jurisdiction in California. There's absolutely no basis in the record and there's no basis under both Supreme Court precedent and Third Circuit precedent to just simply ignore the contractual obligation, the contractual agreement that was struck by the parties, two commercial entities.

THE COURT: Okay. Sir, anything further?

MR. ROBBINS: Yes, Your Honor.

I'm not aware of -- I'm not aware of any other billing with regard to what has been done. The representations were after Mr. Mayo has a number of companies with regard to it. He is not fully understandable of the programs and the software with regard to it. He has people in his office that run it.

Representations were made. He told them what he needed to get done, and the simple basic things couldn't even be done.

The suggestion that, well, wait a minute. We can make more things. It's going to cost you a lot more money and we're not sure whether it will work, since the basic stuff didn't even work, that's when the issues came about. There isn't any further correspondence after I think a three or four month period of time and nothing was being done. I'm not aware of further invoices that have been presented with regard to it. Nothing was said that they were going to come in. Nothing was said, hey, you owe us money. Nothing has been

said with regard to any of the things.

So we disagree with that. And it wasn't such a simple contract because there's all these different programs that have a difficult time understanding.

THE COURT: Okay. Thank you.

Anything further?

MR. FRIEDMAN: No, Your Honor. Thank you.

THE COURT: Initially, let me thank both counsel for their very thorough, well thought out argument, as well as the papers and certifications submitted in support of and in opposition to this application.

The Court will incorporate its prior statement of facts and jurisdiction set forth on the record a few moments ago.

The law is clear, as a matter of fact as recently as August 7th, 2018, in *Reading Health Care Systems versus Bear Stearns*, Docket No. 16-4234. The Third Circuit Court of Appeals reiterated the fact that the district court, if granted much leeway in issues regarding forum non conveniens dismissals, transfer because they are non-merits issues and does not entail the assumption by the court of substantive lawmaking decision power. The Court will, therefore, exercise its discretion and address first the issue of the contract and the dispute resolution clause.

Just to make the record complete, for purposes of a motion to dismiss, the Court must accept the factual

allegations in the complaint as true and draw all inferences in the light most favorable to plaintiffs. *Phillips v. City of Allegheny, 515 F.3d 224 at 228, 3d Cir. 2008.* In deciding a motion to dismiss pursuant to 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all inferences in the facts in the light most favorable to the plaintiff. Again, *Phillips.*

A complaint attacked by a motion to dismiss does not need detailed factual allegations. *Bell Atlantic v. Twombly, 550 U.S. 544, 555.* However, plaintiff's obligation is to provide grounds of his entitlement to relief requires more than labels and conclusions, and a recitation of the elements of the cause of action will not due. That's *Twombly* quoting *Papasan,* P-A-P-A-S-A-N, v. *Allain,* A-L-L-A-I-N, 478 U.S. 265.

A court is not bound to accept as true legal conclusions couched as factual allegations. *Papasan* at 286. Instead, assuming the factual allegations in the complaint are true, factual allegations must be enough to raise a right to relief above the speculative level. *Twombly* at 555.

Nonetheless, at issue is the TOS which contains a dispute resolution clause which reads, in relevant part, as follows: Quote, "Each party agrees that before it seeks mediation, arbitration, or any form of legal relief, it shall provide written notice to the other specific issues in dispute (in referencing the specific portions of any contract between

the parties which are allegedly being breached.)

"Within 30 days of such knowledge, knowledgeable executives of the parties shall hold at least one meeting (in person or by video or teleconference) for the purposes of attempting in good fifth to resolve the dispute." It goes on, "Any and all disputes, claims, or controversies arising out of or relating to this agreement shall be submitted to JAMS for mediation before arbitration, or any other form of legal relief may be disputed. The mediation shall take place in either San Francisco or Santa Clara County, California."

Defendant further contends this Court should dismiss this action based on plaintiff's failure to abide by Section 215 of the TOS entitled Dispute Resolution which, again, requires that before a party seeking any form of legal relief, there must, 1, be written notice to the other parties regarding the specific issues in dispute.

2. The parties must hold a meeting to attempt to resolve the dispute.

3. Any disputes, claims, or controversies arising out of or relating to the agreement shall be submitted to JAMS for mediation before arbitration or any other form of legal relief may be instituted.

The TOS repeatedly uses the words "must" and "shall," which by their plain meaning indicate these steps are mandatory pre-litigation requirements.

As defendant argues, and the Court is well aware, these clauses have been enforced in prior cases. Specifically, in this district, *Chisso*, C-H-I-S-S-O, *American, Inc. v. M/V Hanjin Osaka*, O-S-A-K-A, *307 F. Supp. 2d 621.* Quote, "When a contract uses the word "shall," courts have repeatedly found such language to be mandatory." *Vogt-Nem Inc. v. M/V Tramper*, from North Carolina, 2002, explaining that the use of "will" and "shall" and "must" all indicate the contract language is mandatory.

In this case, the parties entered into a contract, sophisticated business people, plaintiff running successful businesses set forth a cadre of requests for various vendors, met with vendors, ultimately determined that defendants were acceptable. These meetings occurred at arm's length and courts have recognized where the parties' agreement requires mediation as a condition precedent to litigation, the complaint must be dismissed and have not hesitated to dismiss complaints on such grounds. *3-J Hospital No. 09-61077-CIV-MARRA, 2009 Westlaw 3586830.* Quote: "Where the parties' agreement requires mediation as a condition precedent to arbitration or litigation, the complaint must be dismissed." *Mortimer v. First Mount Vernon Industries*, citing the same. *Bronson v. Dry Cleaning Station, Inc.* Quote: "Failure to mediate a dispute pursuant to a contract requires the complaint to be dismissed." Noncontractual claims may be

subject to mediation and arbitration provisions.

This contract makes mediation a condition precedent to filing the lawsuit. Accordingly, the parties entered into this agreement. The parties entered into this agreement at arm's length. The contract is clear and unambiguous. Accordingly, in light of the overwhelming precedent, the defendant's motion to dismiss with prejudice for failure by plaintiff to abide by contractual provisions is granted in part. Specifically, the motion is granted, and the complaint is dismissed without prejudice. The plaintiff is directed to abide by the terms of the TOS, as written and as agreed to by and between the parties. The Court hopes the parties try to resolve the issues prior to beginning either litigation or the arbitration process.

Furthermore, notwithstanding the clear language of the contract, the Court hopes the defendant will be more amenable to accommodating plaintiff's residency, understanding that everyone is here that participated in the negotiations and the contract, but that is not a directive nor is it an order of the court in light of the clear language of the contract.

In light of this ruling, the Court need not address the alternate grounds for relief, which will be denied without prejudice as moot. However, I will comment that forum selection clauses such as the one in the agreement have been enforced in this district and in this circuit. Quote: "In

the Third Circuit, forum selection clauses are presumptively valid." *M/S Breman v. Zapata Off-Shore Company, 407 U.S.1 (1972).* Forum selection clauses are presumptively valid. *Innovative Technologies Distributors, L.L.C. v. Oracle.* A decision from 2011 by then-judge now Chief Judge Linares, stating the same and granting Oracle's motion to transfer pursuant to 28 U.S.C. 1404 (a) to the Northern District of California based in substantial part on the enforceability of a forum selection clause.

For those reasons, the motion is granted. The parties will meet, try to mediate this matter prior to the instituting of any lawsuit, and I have signed the appropriate order.

Anything further?

MR. FRIEDMAN: No, Your Honor.

THE COURT: Anything further?

MR. ROBBINS: No.

THE COURT: Okay. Good luck.

THE DEPUTY COURT CLERK: All rise.

(Court concludes at 10:53 a.m.)

**REPORTER'S CERTIFICATE.**

I, **Megan McKay-Soule, RMR, CRR**, Official Court Reporter of the United States District Court for the District of New Jersey, do hereby certify that the foregoing proceedings are a true and accurate transcript of the testimony as taken stenographically by and before me at the time, place, and on the date hereinbefore set forth.

I further certify that I am neither related to any of the parties by blood or marriage, nor do I have any interest in the outcome of the above matter.

**/S/ Megan McKay-Soule, RMR, CRR** **August 30, 2018**

Court Reporter Date

## $

**$258,000** [1] - 5:15
**$30,000** [1] - 10:25
**$372,000** [1] - 5:14
**$55,436.23** [1] - 5:21
**$631,000** [1] - 5:13
**$75,000** [2] - 3:20, 3:24
**$81,000** [1] - 14:17

## /

**/S** [2] - 1:21, 24:15

## 0

**07095** [1] - 1:15
**08608** [1] - 1:9
**09-61077-CIV-MARRA** [1] - 21:19

## 1

**1** [3] - 2:17, 4:3, 20:15
**10112** [1] - 1:18
**10:19** [2] - 1:10, 2:2
**10:53** [1] - 23:19
**11** [1] - 3:1
**12(b)(6** [4] - 6:10, 6:25, 7:4, 19:4
**12(b)(6)** [2] - 2:20, 6:18
**1332** [2] - 3:8, 3:16
**1332(a** [1] - 3:21
**1404** [3] - 2:19, 6:10, 23:7
**16-4234** [1] - 18:16
**18** [1] - 1:10
**188** [1] - 4:14
**19** [1] - 3:2
**19,000** [1] - 5:21
**1972)** [1] - 23:3

## 2

**2** [4] - 2:18, 4:1, 4:3, 20:17
**20** [1] - 10:25
**200** [1] - 10:25
**2002** [1] - 21:7
**2007** [1] - 4:14
**2008** [1] - 19:3
**2009** [1] - 21:19
**2011** [1] - 23:5
**2017** [5] - 3:25, 4:1, 5:2, 15:3, 15:11
**2018** [7] - 1:10, 2:22, 3:1, 3:2, 18:15, 24:15
**206,991.27** [1] - 14:12
**215** [2] - 1:24, 20:13
**21st** [1] - 2:21
**224** [1] - 19:3
**228** [1] - 19:3
**265** [1] - 19:14
**27** [1] - 5:2
**28** [6] - 1:20, 2:18, 3:7, 3:16, 3:21, 23:7
**286** [1] - 19:16
**2d** [1] - 21:4

## 3

**3** [3] - 2:19, 4:4, 20:19
**3-J** [3] - 8:9, 8:15, 21:18
**30** [3] - 1:18, 20:2, 24:15
**307** [1] - 21:4
**3586830** [1] - 21:19
**3:18-cv-09222-BRM-TJB** [1] - 1:4
**3d** [2] - 4:14, 19:3

## 4

**4** [1] - 4:5
**402** [1] - 1:9
**407** [1] - 23:2
**4570283** [1] - 4:1
**478** [1] - 19:14

## 5

**5** [5] - 2:21, 2:22, 5:6, 5:9, 7:11
**507** [1] - 4:14
**515** [1] - 19:3
**544** [1] - 19:10
**55** [1] - 10:24
**55,000** [1] - 11:5
**550** [1] - 19:10
**555** [2] - 19:10, 19:19
**568** [1] - 1:15

## 6

**621** [1] - 21:4

## 7

**7** [1] - 2:23
**753** [1] - 1:21
**779-6437** [1] - 1:24
**7th** [1] - 18:15

## 8

**81,310.15** [1] - 14:10

## 9

**9** [1] - 3:1

## A

**a.m** [3] - 1:10, 2:2, 23:19
**abide** [4] - 2:17, 20:12, 22:8, 22:11
**abilities** [1] - 4:21
**able** [2] - 7:19, 10:12
**absolutely** [1] - 17:1
**acceleration** [2] - 14:13, 14:14
**accept** [3] - 18:25, 19:5, 19:15
**acceptable** [1] - 21:14
**accommodating** [1] - 22:17
**accordingly** [2] - 22:3, 22:6
**accurate** [1] - 24:7
**acknowledge** [1] - 11:19
**acknowledges** [1] - 5:10
**Act** [1] - 4:4
**action** [3] - 12:6, 19:13, 20:12
**ACTION** [1] - 1:3
**actions** [2] - 3:23, 4:2
**actual** [1] - 16:24
**add** [1] - 15:4
**addition** [1] - 5:21
**additional** [2] - 5:16, 15:25
**address** [5] - 6:10, 12:10, 15:18, 18:22, 22:21
**admits** [1] - 5:19
**ago** [1] - 18:13
**agree** [1] - 6:22
**agreed** [5] - 4:23, 5:14, 8:12, 9:19, 22:11
**agreement** [9] - 5:20, 17:4, 20:7, 20:20, 21:15, 21:20, 22:4, 22:24
**Agreement** [2] - 5:1, 7:9
**agrees** [4] - 3:12, 5:10, 5:11, 19:22
**akin** [1] - 16:18
**al** [1] - 1:6
**Allain** [1] - 19:14
**ALLAIN** [1] - 19:14
**allegations** [7] - 4:6, 19:1, 19:5, 19:9, 19:16, 19:17, 19:18
**allegedly** [1] - 20:1
**Allegheny** [1] - 19:3
**alternate** [2] - 8:2, 22:22
**alternative** [1] - 8:11
**alternatives** [2] - 6:6, 6:7
**ambiguous** [1] - 4:10
**Amboy** [1] - 1:15
**amenable** [1] - 22:16
**America** [1] - 2:14
**AMERICA** [1] - 1:6
**American** [1] - 21:3
**amount** [9] - 3:20, 4:7, 4:8, 4:11, 10:24, 12:7, 12:8, 14:10, 14:17
**amounts** [1] - 4:7
**Appeals** [1] - 18:17
**appearances** [1] - 2:4
**application** [6] - 5:4, 6:4, 14:21, 15:2, 15:12, 18:11
**appropriate** [1] - 23:12
**April** [1] - 5:2
**arbitration** [7] - 8:13, 19:23, 20:8, 20:21, 21:21, 22:1, 22:14
**argues** [4] - 3:12, 3:19, 4:6, 21:1
**ARGUMENT** [1] - 1:5
**argument** [6] - 3:3, 3:13, 8:6, 8:7, 11:25, 18:9
**arguments** [1] - 2:13
**arising** [2] - 20:6, 20:19
**arm's** [2] - 21:14, 22:5
**aspect** [1] - 8:1
**assertion** [1] - 2:23
**asserts** [1] - 4:2
**associated** [1] - 4:7
**assuming** [1] - 19:17
**assumption** [1] - 18:20
**Atlantic** [1] - 19:9
**Atlantis** [1] - 3:25
**attacked** [1] - 19:8
**attempt** [1] - 20:17
**attempting** [1] - 20:5
**August** [3] - 1:10, 18:15, 24:15
**August/September** [1] - 15:3
**authority** [5] - 7:19, 7:24, 8:4, 8:8, 8:14
**Avenue** [1] - 1:15
**aware** [7] - 10:14, 10:19, 11:25, 17:8, 17:23, 21:1

## B

**Bantassel** [2] - 10:3, 13:23
**based** [5] - 8:8, 9:2, 13:22, 20:12, 23:8
**basic** [3] - 10:4, 17:15, 17:19
**basis** [2] - 17:2
**Bear** [1] - 18:15
**BEAUTY** [1] - 1:3
**Beauty** [4] - 2:6, 2:16, 13:1, 15:5
**beauty** [1] - 4:17
**beginning** [2] - 4:19, 22:13
**begins** [1] - 2:2
**bell** [1] - 19:9
**between** [3] - 13:15, 19:25, 22:12
**beyond** [1] - 16:17
**billed** [1] - 14:16
**billing** [1] - 17:8
**blood** [1] - 24:11
**bound** [2] - 5:11, 19:15
**breach** [2] - 4:3, 4:5
**breached** [1] - 20:1
**Breman** [1] - 23:2
**BRIAN** [1] - 1:11
**brief** [1] - 3:6
**briefed** [1] - 3:2
**bring** [1] - 13:11
**Bronson** [1] - 21:23
**brought** [1] - 10:15
**Building** [1] - 1:8
**burden** [1] - 16:6
**business** [8] - 3:7, 3:10, 3:11, 4:16, 4:19, 5:4, 9:7, 21:11
**businesses** [6] - 9:8, 14:24, 16:15, 16:16, 21:12
**BY** [2] - 1:14, 1:17

## C

**c)(1** [1] - 3:8
**cadre** [1] - 21:12
**calculate** [1] - 4:11
**California** [13] - 6:17, 9:22, 11:23, 11:25, 12:3, 12:4, 12:12, 12:23, 13:7, 13:11, 17:1, 20:10, 23:8
**cancel** [1] - 5:24

**Care** [1] - 18:15
**Carolina** [1] - 21:7
**case** [8] - 6:23, 8:9, 8:15, 10:17, 13:11, 15:20, 15:22, 21:10
**cases** [3] - 8:3, 8:5, 21:2
**causes** [1] - 4:2
**certain** [4] - 4:18, 5:3, 5:4, 5:16
**certainly** [1] - 4:8
**certainty** [1] - 7:19
**CERTIFICATE** [1] - 24:2
**certification** [3] - 2:22, 2:24, 16:14
**certifications** [1] - 18:10
**Certified** [1] - 1:20
**certify** [2] - 24:6, 24:10
**check** [1] - 9:15
**checked** [1] - 13:19
**checks** [1] - 10:6
**Chief** [1] - 23:5
**Chisso** [1] - 21:3
**CHISSO** [1] - 21:3
**chose** [1] - 16:21
**Cir** [2] - 4:14, 19:3
**Circuit** [4] - 16:3, 17:3, 18:16, 23:1
**circuit** [1] - 22:25
**cite** [1] - 8:8
**cited** [2] - 8:3, 8:14
**citing** [3] - 3:24, 5:8, 21:22
**citizen** [2] - 3:8, 3:16
**citizens** [2] - 3:15, 3:17
**citizenship** [2] - 12:11, 12:16
**City** [1] - 19:2
**Civil** [1] - 2:20
**CIVIL** [1] - 1:3
**civil** [1] - 3:23
**claim** [1] - 4:8
**claims** [4] - 4:7, 20:6, 20:19, 21:25
**Clara** [1] - 20:10
**Clarkson** [1] - 1:8
**clause** [8] - 6:19, 12:20, 14:13, 14:14, 14:15, 18:23, 19:21, 23:9
**clauses** [4] - 21:2, 22:24, 23:1, 23:3
**Cleaning** [1] - 21:23
**clear** [5] - 11:15, 18:14, 22:5, 22:15, 22:20
**CLERK** [2] - 2:1, 23:18
**client** [1] - 8:23
**closer** [1] - 3:12
**collectively** [1] - 2:15
**comfortable** [1] - 6:7
**commenced** [3] - 10:6, 11:15, 12:6
**Commencing** [1] - 1:10
**comment** [1] - 22:23
**commercial** [4] - 16:4, 16:5, 16:12, 17:5
**common** [1] - 7:23
**communication** [3] - 11:14, 15:10
**communications** [1] - 9:18
**companies** [3] - 4:18, 4:22, 17:10
**company** [3] - 4:22, 16:13, 16:20
**Company** [1] - 23:2
**complaint** [13] - 2:17, 4:2, 4:5, 4:9, 4:12, 19:1, 19:6, 19:8, 19:17, 21:17, 21:21, 21:25, 22:9
**complaints** [1] - 21:18
**complete** [1] - 18:24
**completely** [1] - 15:2
**computer** [3] - 4:19, 9:4, 9:16
**computers** [1] - 4:21
**concludes** [1] - 23:19
**conclusions** [2] - 19:12, 19:16
**condition** [3] - 21:16, 21:20, 22:2
**conditions** [1] - 2:18
**conference** [2] - 6:20, 13:13
**conferencing** [1] - 13:14
**considered** [1] - 2:25
**considering** [1] - 13:14
**Consumer** [1] - 4:4
**contained** [1] - 7:8
**contains** [1] - 19:20
**contends** [2] - 5:18, 20:11
**contention** [1] - 3:19
**contract** [32] - 4:3, 5:25, 8:19, 8:23, 9:2, 10:13, 10:24, 11:3, 11:20, 11:21, 12:1, 12:2, 12:22, 13:9, 14:22, 16:5, 16:7, 16:13, 16:24, 18:3, 18:22, 19:25, 21:5, 21:8, 21:10, 21:24, 22:2, 22:5, 22:16, 22:19, 22:20
**contracts** [2] - 7:21, 7:23
**contractual** [4] - 2:17, 17:4, 22:8
**controversies** [2] - 20:6, 20:19
**controversy** [2] - 3:23, 4:11
**convenience** [1] - 14:15
**conveniens** [2] - 11:25, 18:18
**convenient** [3] - 12:25, 13:7, 13:11
**corporate** [1] - 12:23
**corporation** [2] - 3:8, 12:11
**corporations** [1] - 3:5
**correct** [3] - 1:20, 15:6, 15:23
**correctly** [2] - 3:21, 6:9
**correspondence** [2] - 10:2, 17:21
**cost** [3] - 5:13, 5:15, 17:18
**costs** [1] - 5:16
**couched** [1] - 19:16
**counsel** [8] - 2:3, 2:13, 6:4, 8:19, 8:23, 14:6, 16:21, 18:8
**counselor** [1] - 6:7
**county** [1] - 12:24
**County** [2] - 6:1, 20:10
**course** [2] - 16:9, 16:10
**COURT** [24] - 1:1, 2:1, 2:3, 2:10, 6:12, 6:19, 7:2, 7:7, 7:14, 8:6, 8:18, 11:2, 11:19, 12:15, 12:18, 13:16, 14:5, 14:13, 17:6, 18:5, 18:8, 23:15, 23:17, 23:18
**Court** [27] - 1:23, 2:14, 2:25, 3:4, 3:12, 3:13, 4:15, 6:3, 8:1, 11:3, 12:18, 12:19, 16:3, 17:3, 18:12, 18:16, 18:21, 18:25, 20:11, 21:1, 22:12, 22:16, 22:21, 23:19, 24:4, 24:5, 24:16
**court** [12] - 2:2, 3:3, 4:13, 6:1, 10:17, 12:9, 14:3, 18:17, 18:20, 19:4, 19:15, 22:20
**Courthouse** [1] - 1:8
**courts** [3] - 3:22, 21:5, 21:15
**CRR** [3] - 1:21, 24:4, 24:15
**curlers** [1] - 4:17
**customer** [1] - 5:10
**CV173363RBKKMW** [1] - 3:25

## D

**damage** [1] - 8:22
**damages** [1] - 4:7
**date** [1] - 24:9
**Date** [1] - 24:16
**dated** [1] - 5:2
**days** [1] - 20:2
**December** [1] - 15:11
**deciding** [1] - 19:3
**decision** [3] - 15:21, 18:21, 23:5
**declaration** [1] - 5:9
**Deeming** [1] - 3:8
**defective** [1] - 2:24
**Defendant** [2] - 1:19, 20:11
**defendant** [11] - 2:14, 3:1, 3:5, 3:12, 3:19, 3:20, 4:6, 4:25, 6:2, 21:1, 22:16
**defendant's** [3] - 2:23, 4:11, 22:7
**Defendants** [1] - 1:7
**defendants** [7] - 2:8, 2:16, 3:5, 3:15, 4:3, 5:2, 21:13
**deference** [1] - 8:2
**defined** [1] - 5:4
**demand** [2] - 11:8, 11:14
**demo** [2] - 15:6, 15:11
**demonstrate** [1] - 16:7
**denied** [1] - 22:22
**Depot** [1] - 4:13
**DEPUTY** [2] - 2:1, 23:18
**despite** [1] - 2:23
**detailed** [1] - 19:9
**determined** [2] - 12:19, 21:13
**devoid** [1] - 4:6
**different** [6] - 3:18, 9:12, 13:24, 14:24, 16:19, 18:3
**difficult** [2] - 8:25, 18:4
**directed** [1] - 22:10
**directive** [1] - 22:19
**disagree** [1] - 18:2
**discount** [1] - 5:14
**discretion** [3] - 6:14, 7:3, 18:22
**discuss** [1] - 7:22
**discussed** [1] - 15:7
**discussions** [2] - 14:22, 15:5
**dismiss** [11] - 2:16, 2:19, 6:17, 6:23, 18:25, 19:4, 19:8, 20:11, 21:17, 22:7
**dismissals** [1] - 18:19
**dismissed** [5] - 8:5, 21:17, 21:22, 21:25, 22:10
**dispute** [12] - 3:20, 7:8, 7:20, 8:2, 8:11, 18:23, 19:21, 19:24, 20:5, 20:16, 20:18, 21:24
**Dispute** [1] - 20:13
**disputed** [2] - 15:8, 20:9
**disputes** [2] - 20:6, 20:19
**disregarded** [1] - 2:24
**Distributors** [1] - 23:4
**district** [4] - 18:17, 19:4, 21:3, 22:25
**DISTRICT** [3] - 1:1, 1:1, 1:12
**District** [5] - 3:22, 4:1, 23:7, 24:5
**diversity** [2] - 3:18, 12:11
**Docket** [2] - 2:23, 18:16
**document** [2] - 7:11, 16:22
**Document** [2] - 2:21, 3:1
**dog** [1] - 9:24
**done** [7] - 8:22, 11:12, 13:19, 17:9, 17:15, 17:16, 17:22
**down** [3] - 7:22, 12:2, 14:18
**draw** [2] - 19:1, 19:6
**dry** [1] - 21:23
**dryers** [1] - 4:17
**due** [3] - 14:11, 14:16, 19:13

## E

**e-mails** [2] - 10:2, 13:15
**East** [1] - 1:9

**effort** [2] - 15:24
**eight** [1] - 11:13
**either** [4] - 13:2, 14:15, 20:10, 22:13
**elements** [1] - 19:12
**employees** [1] - 10:21
**end** [1] - 15:15
**enforceability** [1] - 23:8
**enforced** [4] - 16:8, 16:10, 21:2, 22:25
**entail** [1] - 18:20
**entered** [6] - 4:25, 5:20, 9:2, 21:10, 22:3, 22:4
**enters** [1] - 8:23
**entities** [1] - 17:5
**entitled** [2] - 14:1, 20:13
**entitlement** [1] - 19:11
**equipment** [4] - 11:1, 11:6, 13:5, 13:21
**ERP** [1] - 14:23
**erroneous** [1] - 3:20
**escalate** [1] - 7:22
**ESQUIRE** [2] - 1:14, 1:17
**essentially** [1] - 8:8
**estimation** [1] - 14:23
**et** [1] - 1:6
**evidence** [1] - 16:11
**example** [2] - 7:22, 8:4
**exceeds** [1] - 3:23
**executed** [1] - 7:10
**executives** [2] - 7:21, 20:3
**exercise** [2] - 3:13, 18:21
**exercised** [1] - 7:4
**Exhibit** [1] - 5:9
**existing** [1] - 9:17
**expectations** [2] - 5:24, 9:4
**explaining** [1] - 21:7
**expression** [1] - 9:24
**expressly** [1] - 5:7

## F

**F.3d** [2] - 4:14, 19:3
**fact** [7] - 9:9, 10:11, 12:5, 15:9, 16:21, 18:14, 18:17
**facts** [4] - 4:15, 14:20, 18:12, 19:6
**factual** [7] - 14:8, 18:25, 19:5, 19:9, 19:16, 19:17, 19:18
**failure** [5] - 2:17, 7:7, 20:12, 21:24, 22:7
**fashion** [1] - 7:1
**favorable** [2] - 19:2, 19:7
**federal** [2] - 4:13, 14:2
**Federal** [1] - 2:19
**fees** [1] - 5:5
**few** [4] - 9:5, 14:8, 16:24, 18:13
**fifth** [1] - 20:5
**figure** [2] - 10:1, 13:25
**file** [1] - 11:18
**filed** [6] - 2:21, 2:22, 4:13, 11:9, 12:9, 13:14
**filing** [2] - 5:25, 22:3
**final** [1] - 9:20
**first** [5] - 6:16, 6:25, 12:25, 18:22, 21:22
**Fisher** [1] - 1:8
**five** [2] - 10:19, 12:13
**fix** [1] - 11:11
**Florida** [1] - 8:4
**focused** [1] - 7:25
**focusing** [1] - 7:17
**folks** [4] - 15:4, 15:5, 15:11, 15:24
**follow** [1] - 7:7
**follows** [1] - 19:22
**FOR** [1] - 1:1
**foregoing** [1] - 24:6
**foreign** [1] - 3:10
**form** [4] - 19:23, 20:8, 20:14, 20:21
**forth** [7] - 6:2, 9:13, 9:18, 13:15, 18:13, 21:12, 24:9
**forum** [8] - 11:24, 12:20, 14:1, 18:18, 22:23, 23:1, 23:3, 23:9
**forward** [1] - 4:16
**forwarded** [1] - 10:12
**four** [2] - 4:2, 17:21
**Francisco** [1] - 20:10
**frankly** [1] - 15:14
**fraud** [1] - 4:4
**Fraud** [1] - 4:4
**Frederico** [1] - 4:13
**FRIEDMAN** [14] - 1:17, 2:7, 6:8, 6:13, 6:21, 7:3, 7:10, 7:17, 8:7, 11:5, 14:7, 14:14, 18:7, 23:14
**Friedman** [2] - 2:7, 5:8
**fully** [2] - 3:2, 17:11
**function** [1] - 4:12
**furthermore** [1] - 22:15
**futile** [1] - 15:19

## G

**gather** [1] - 12:23
**general** [1] - 3:13
**Google** [1] - 12:13
**grant** [4] - 6:5, 6:10, 6:23, 7:4
**granted** [4] - 18:18, 22:8, 22:9, 23:10
**granting** [1] - 23:6
**grounds** [3] - 19:11, 21:18, 22:22
**Group** [1] - 3:25
**guess** [2] - 6:19, 15:19
**guys** [1] - 15:12

## H

**hair** [1] - 4:17
**Hampton** [1] - 2:8
**HAMPTON** [1] - 1:17
**Hanjin** [1] - 21:4
**happy** [2] - 13:13, 14:3
**hard** [1] - 9:1
**hardware** [2] - 5:16, 5:22
**headquarters** [2] - 12:12, 12:24
**Health** [1] - 18:15
**hear** [4] - 2:13, 6:4, 8:6, 8:18
**heard** [2] - 11:20, 11:23
**held** [1] - 13:10
**hereby** [1] - 24:6
**hereinafter** [2] - 5:1, 5:7
**hereinbefore** [1] - 24:9
**hesitated** [1] - 21:17
**high** [1] - 16:9
**highly** [1] - 16:6
**hold** [2] - 20:3, 20:17
**Home** [1] - 4:13
**Honor** [11] - 2:9, 6:8, 6:9, 7:11, 8:21, 14:7, 15:17, 16:2, 17:7, 18:7, 23:14
**Honor's** [3] - 6:14, 14:9, 15:21
**HONORABLE** [1] - 1:11
**hopes** [2] - 22:12, 22:16
**Hospital** [3] - 8:9, 8:15, 21:18
**hunt** [1] - 9:25

## I

**idea** [4] - 8:22, 9:6, 10:13, 11:1
**identified** [1] - 7:11
**ignore** [1] - 17:4
**ignored** [1] - 15:19
**important** [1] - 15:20
**INC** [1] - 1:6
**Inc** [4] - 2:14, 21:3, 21:6, 21:23
**Inc.'s** [1] - 2:15
**including** [4] - 4:17, 4:22, 8:9, 8:15
**incorporate** [1] - 18:12
**incorporated** [4] - 3:9, 7:8, 7:12, 8:10
**incorporates** [2] - 5:7, 8:19
**incorporation** [1] - 3:7
**increase** [1] - 4:20
**indicate** [2] - 20:24, 21:8
**individuals** [3] - 4:23, 9:21, 16:14
**Industries** [1] - 21:22
**inferences** [2] - 19:1, 19:6
**informal** [1] - 7:20
**ingredients** [1] - 4:10
**initial** [3] - 3:4, 5:20, 15:16
**initiation** [2] - 8:12, 8:17
**Innovative** [1] - 23:4
**inquiry** [1] - 5:24
**instead** [1] - 19:17
**instituted** [2] - 8:16, 20:22
**instituting** [1] - 23:11
**integrate** [1] - 16:16
**interest** [1] - 24:11
**interviewed** [2] - 4:22, 16:18
**inventory** [2] - 9:15, 10:5
**invoices** [3] - 14:8, 14:11, 17:23
**involves** [1] - 4:16
**issue** [4] - 12:18, 15:9, 18:22, 19:20
**issues** [9] - 9:10, 15:6, 16:1, 17:20, 18:18, 18:19, 19:24, 20:16, 22:13

## J

**JAMS** [2] - 20:7, 20:20
**JERSEY** [1] - 1:1
**Jersey** [17] - 1:9, 3:12, 3:16, 3:17, 4:1, 4:4, 10:22, 11:24, 12:3, 12:5, 12:14, 13:1, 13:3, 13:5, 13:6, 14:2, 24:6
**Jose** [1] - 12:22
**judge** [1] - 23:5
**Judge** [1] - 23:5
**JUDGE** [1] - 1:12
**July** [1] - 3:2
**jumps** [1] - 8:21
**June** [2] - 2:22, 3:1
**jurisdiction** [8] - 3:5, 3:14, 3:22, 7:4, 12:16, 12:19, 17:1, 18:13
**jurisdictional** [1] - 4:9

## K

**keeping** [2] - 9:15, 10:5
**kind** [1] - 7:23
**knowledge** [1] - 20:2
**knowledgeable** [1] - 20:2
**knows** [2] - 8:1, 16:3

## L

**L.L.C** [2] - 3:25, 23:4
**L.L.C.'s** [1] - 2:17
**labels** [1] - 19:12
**laid** [1] - 12:22
**landed** [1] - 10:13
**language** [6] - 8:9, 11:22, 21:6, 21:8, 22:15, 22:20
**law** [1] - 18:14
**lawmaking** [1] - 18:21
**lawsuit** [6] - 5:25, 8:12, 8:17, 11:15, 22:3, 23:12
**least** [2] - 15:8, 20:3
**led** [2] - 5:25, 16:13
**leeway** [1] - 18:18
**legal** [5] - 19:15, 19:23, 20:8, 20:14, 20:21
**length** [2] - 21:14, 22:5
**less** [1] - 4:8
**level** [1] - 19:19
**light** [5] - 19:2, 19:6, 22:6, 22:20, 22:21
**limitation** [1] - 10:15
**Linares** [1] - 23:5
**linear** [1] - 7:1

**liquid** [1] - 4:17
**litigating** [1] - 6:16
**litigation** [4] - 20:25, 21:16, 21:21, 22:13
**LLC** [1] - 1:3
**LLP** [2] - 1:17, 2:8
**located** [3] - 9:21, 10:18, 10:19
**logical** [1] - 7:6
**luck** [1] - 23:17

## M

**M/S** [1] - 23:2
**M/V** [2] - 21:3, 21:6
**mails** [2] - 10:2, 13:15
**main** [2] - 5:11, 12:12
**mandated** [1] - 16:4
**mandatory** [7] - 7:12, 7:24, 16:25, 20:25, 21:6, 21:9
**marriage** [1] - 24:11
**MARTINOTTI** [1] - 1:11
**Massachusetts** [4] - 9:22, 12:3, 12:5, 13:3
**matter** [10] - 3:2, 3:4, 3:23, 10:23, 11:23, 16:8, 16:10, 18:14, 23:11, 24:12
**Mayo** [6] - 4:21, 5:18, 13:23, 16:14, 16:24, 17:10
**MCKAY** [1] - 1:21
**McKay** [3] - 1:23, 24:4, 24:15
**MCKAY-SOULE** [1] - 1:21
**McKay-Soule** [3] - 1:23, 24:4, 24:15
**mean** [1] - 16:21
**meaning** [3] - 9:3, 9:13, 20:24
**mechanism** [1] - 6:15
**mediate** [2] - 21:24, 23:11
**mediation** [16] - 6:20, 6:21, 7:12, 7:15, 7:18, 8:1, 8:14, 15:17, 19:23, 20:8, 20:9, 20:21, 21:16, 21:20, 22:1, 22:2
**meet** [3] - 5:23, 15:13, 23:11
**meeting** [5] - 4:22, 7:20, 11:17, 20:3, 20:17
**meetings** [1] - 21:14
**MEGAN** [1] - 1:21
**Megan** [3] - 1:23, 24:4, 24:15
**megansoule430@ gmail.com** [1] - 1:23
**mentioned** [1] - 10:10
**merchantability** [1] - 4:5
**merits** [1] - 18:19
**met** [2] - 6:24, 21:13
**Middlesex** [2] - 6:1, 10:17
**might** [1] - 15:8
**minimum** [1] - 4:9
**minor** [1] - 13:24
**minute** [1] - 17:17
**Miss** [2] - 10:2, 13:23
**moments** [1] - 18:13
**money** [7] - 11:7, 11:8, 11:17, 12:7, 13:20, 17:18, 17:25
**monitored** [1] - 10:11
**month** [2] - 9:13, 17:22
**months** [1] - 11:13
**moot** [2] - 6:6, 22:23
**morning** [3] - 2:3, 2:8, 2:10
**Mortimer** [1] - 21:22
**most** [4] - 7:5, 7:6, 19:2, 19:7
**mostly** [1] - 9:21
**motion** [17] - 2:16, 2:21, 3:15, 6:10, 6:11, 6:17, 6:23, 7:5, 11:2, 16:2, 18:25, 19:4, 19:8, 22:7, 22:9, 23:6, 23:10
**Motor** [1] - 3:25
**Mount** [1] - 21:22
**moved** [1] - 6:2
**MR** [21] - 2:5, 2:7, 6:8, 6:13, 6:21, 7:3, 7:10, 7:17, 8:7, 8:21, 11:5, 11:22, 12:17, 12:21, 13:18, 14:7, 14:14, 17:7, 18:7, 23:14, 23:16
**MULLIN** [1] - 1:17
**Mullin** [1] - 2:7
**must** [8] - 18:25, 19:18, 20:15, 20:17, 20:23, 21:8, 21:17, 21:21

## N

**nature** [1] - 7:24
**need** [3] - 13:25, 19:9, 22:21
**needed** [2] - 4:10, 17:14
**needs** [1] - 15:13
**negotiated** [1] - 16:12
**negotiations** [1] - 22:18
**Nem** [1] - 21:6
**NetSuite** [3] - 2:15, 4:23, 11:7
**NetSuite1** [1] - 5:3
**nevertheless** [1] - 3:15
**new** [1] - 15:12
**NEW** [1] - 1:1
**New** [18] - 1:9, 1:18, 3:11, 3:16, 4:1, 4:4, 10:22, 11:24, 12:3, 12:5, 12:14, 13:1, 13:3, 13:5, 13:6, 14:2, 24:5
**NJ** [1] - 1:15
**nobody** [3] - 10:14, 11:25, 13:14
**non** [3] - 11:24, 18:18, 18:19
**non-merits** [1] - 18:19
**noncontractual** [1] - 21:25
**nonetheless** [1] - 19:20
**North** [1] - 21:7
**Northern** [1] - 23:7
**nothing** [11] - 9:23, 10:4, 10:10, 11:6, 11:12, 11:16, 15:21, 17:22, 17:24, 17:25
**notice** [3] - 4:11, 19:24, 20:15
**notwithstanding** [1] - 22:15
**NUMBER** [1] - 1:3
**number** [5] - 9:3, 9:7, 9:9, 9:12, 17:10
**NY** [1] - 1:18

## O

**obligation** [3] - 7:15, 17:4, 19:10
**occurred** [1] - 21:14
**October** [1] - 4:1
**OF** [1] - 1:1
**Off-Shore** [1] - 23:2
**offered** [1] - 5:2
**office** [1] - 17:12
**offices** [3] - 10:19, 12:14, 13:4
**Official** [2] - 1:23, 24:4
**once** [3] - 14:15, 14:25, 15:3
**one** [6] - 4:10, 6:5, 8:3, 13:7, 20:3, 22:24
**Open** [1] - 2:2
**operate** [2] - 5:18, 12:12
**opportunity** [1] - 14:4
**opposite** [1] - 16:12
**opposition** [2] - 2:23, 18:11
**ORACLE** [1] - 1:6
**Oracle** [10] - 2:14, 3:11, 3:14, 10:18, 10:21, 11:7, 15:4, 15:10, 15:24, 23:4
**Oracle's** [3] - 3:14, 16:1, 23:6
**ORAL** [1] - 1:5
**oral** [1] - 3:3
**order** [2] - 22:19, 23:12
**original** [1] - 3:22
**Osaka** [1] - 21:4
**OSAKA** [1] - 21:4
**outcome** [1] - 24:12
**outlined** [1] - 8:25
**outstanding** [2] - 14:9, 14:17
**overview** [1] - 2:13
**overwhelming** [1] - 22:6
**owe** [2] - 11:8, 17:25

## P

**pages** [1] - 16:24
**paid** [4] - 10:24, 10:25, 11:5
**Papasan** [2] - 19:14, 19:16
**PAPASAN** [1] - 19:14
**papers** [2] - 2:12, 18:10
**part** [5] - 13:2, 14:19, 19:21, 22:9, 23:8
**participated** [1] - 22:18
**parties** [18] - 3:17, 7:22, 8:12, 13:15, 16:4, 16:5, 17:5, 20:1, 20:3, 20:15, 20:17, 21:10, 22:3, 22:4, 22:12, 23:10, 24:11
**parties'** [2] - 21:15, 21:20
**party** [3] - 16:12, 19:22, 20:14
**paying** [1] - 11:4
**payment** [1] - 5:20
**payments** [2] - 11:4, 12:4
**people** [4] - 12:2, 13:4, 17:12, 21:11
**perceived** [2] - 16:1
**period** [3] - 9:13, 15:4, 17:22
**person** [2] - 16:6, 20:4
**persuasive** [1] - 8:4
**phillips** [1] - 19:2
**Phillips** [1] - 19:7
**place** [3] - 3:10, 20:9, 24:8
**places** [1] - 3:7
**plain** [1] - 20:24
**Plaintiff** [1] - 1:16
**plaintiff** [14] - 2:6, 2:16, 2:22, 3:16, 4:23, 5:3, 5:17, 5:19, 5:21, 5:25, 19:7, 21:11, 22:8, 22:10
**plaintiff's** [8] - 3:19, 4:2, 4:16, 5:23, 8:18, 19:10, 20:12, 22:17
**Plaintiffs** [1] - 1:4
**plaintiffs** [2] - 3:11, 19:2
**Plaza** [1] - 1:18
**point** [4] - 4:20, 6:15, 14:19, 15:9
**points** [2] - 3:6, 3:21
**policy** [4] - 9:23, 10:8, 11:9, 11:16
**portion** [1] - 9:20
**portions** [1] - 19:25
**power** [1] - 18:21
**pre** [1] - 20:25
**pre-litigation** [1] - 20:25
**precedent** [7] - 2:18, 17:3, 21:16, 21:20, 22:2, 22:6
**prejudice** [3] - 22:7, 22:10, 22:23
**prepayment** [3] - 14:21, 15:1, 15:13
**prerequisite** [3] - 6:24, 8:3, 8:16
**presented** [1] - 17:23
**presently** [1] - 11:2
**presumption** [1] - 16:9
**presumptively** [2] - 23:1, 23:3
**previously** [1] - 6:3
**principal** [3] - 3:7, 3:10, 4:21
**print** [1] - 8:24
**procedural** [1] - 6:15
**Procedure** [1] - 2:20
**procedure** [1] - 10:16
**proceedings** [1] - 24:6

**process** [3] - 16:18, 16:20, 22:14
**products** [4] - 4:17, 4:18, 14:23
**profit** [1] - 10:20
**program** [4] - 5:13, 5:23, 9:16, 15:25
**programs** [7] - 4:20, 5:19, 9:5, 10:11, 11:11, 17:11, 18:3
**progression** [1] - 7:6
**proper** [4] - 6:15, 12:10, 13:8
**proposal** [1] - 16:18
**provide** [4] - 15:6, 15:25, 19:11, 19:24
**provided** [2] - 14:21, 14:25
**providers** [1] - 16:19
**provision** [3] - 7:13, 8:13, 8:14
**provisions** [2] - 22:1, 22:8
**purchase** [2] - 5:17, 5:22
**purchased** [1] - 13:5
**purposes** [2] - 18:24, 20:4
**pursuant** [8] - 2:18, 2:19, 14:21, 14:22, 19:4, 21:24, 23:7

**Q**

**questions** [1] - 14:10
**QuickBooks** [1] - 13:25
**quite** [1] - 16:11
**Quote** [1] - 21:23
**quote** [6] - 3:22, 4:24, 19:22, 21:4, 21:19, 22:25
**quoting** [1] - 19:13

**R**

**raise** [1] - 19:18
**rather** [1] - 12:16
**REACTIONS** [1] - 1:3
**Reactions** [4] - 2:6, 2:16, 13:1, 15:5
**read** [3] - 2:12, 5:10, 8:25
**Reading** [1] - 18:15
**reads** [1] - 19:21
**really** [1] - 7:25
**reason** [2] - 7:17, 15:1
**reasons** [1] - 23:10
**recently** [1] - 18:14
**recitation** [1] - 19:12
**recognized** [1] - 21:15
**record** [7] - 2:4, 6:3, 15:21, 15:23, 17:2, 18:13, 18:24
**redress** [6] - 8:22, 8:25, 9:20, 11:1, 11:18, 13:12
**refer** [1] - 2:15
**referenced** [1] - 3:11
**referencing** [1] - 19:25
**referred** [2] - 5:1, 5:7
**refund** [4] - 9:23, 10:8, 11:9, 11:16
**regard** [18] - 8:24, 9:2, 9:10, 10:2, 10:9, 11:10, 11:12, 11:15, 11:23, 12:7, 13:10, 13:13, 13:19, 17:9, 17:10, 17:12, 17:23, 18:1
**regarding** [2] - 18:18, 20:16
**reiterated** [1] - 18:17
**related** [1] - 24:10
**relating** [2] - 20:7, 20:20
**relatively** [1] - 4:15
**relevant** [4] - 3:6, 11:2, 14:19, 19:21
**relief** [8] - 6:2, 19:11, 19:19, 19:23, 20:9, 20:14, 20:21, 22:22
**remainder** [1] - 6:6
**removal** [1] - 4:12
**removed** [1] - 6:1
**repeatedly** [2] - 20:23, 21:5
**replied** [1] - 3:1
**Reporter** [3] - 1:23, 24:4, 24:16
**REPORTER'S** [1] - 24:2
**represent** [1] - 10:21
**representations** [4] - 5:18, 13:22, 17:9, 17:14
**representing** [1] - 2:6
**request** [3] - 11:6, 14:25, 16:18
**requested** [1] - 9:3
**requests** [1] - 21:12
**required** [3] - 1:20, 5:17, 19:5
**requirement** [1] - 15:17
**requirements** [2] - 15:7, 20:25
**requires** [5] - 19:11, 20:14, 21:15, 21:20, 21:24
**requiring** [1] - 6:19
**residency** [1] - 22:17
**resolution** [7] - 7:8, 7:20, 8:2, 8:11, 13:18, 18:23, 19:21
**Resolution** [1] - 20:13
**resolve** [4] - 7:15, 20:5, 20:18, 22:13
**respect** [9] - 7:20, 7:24, 15:7, 15:17, 15:22, 16:2, 16:11, 16:23, 16:25
**response** [3] - 14:9, 15:14, 15:15
**responses** [1] - 14:8
**result** [1] - 10:6
**return** [1] - 5:4
**RICHTER** [1] - 1:17
**Richter** [1] - 2:8
**rise** [2] - 2:1, 23:18
**RMR** [3] - 1:21, 24:4, 24:15
**ROBBINS** [11] - 1:14, 1:14, 2:5, 8:21, 11:22, 12:17, 12:21, 13:18, 17:7, 23:16
**Robbins** [4] - 2:5, 15:18
**ROBERT** [1] - 1:17
**Robert** [1] - 2:7
**Rockefeller** [1] - 1:18
**Rule** [1] - 2:19
**ruling** [1] - 22:21
**run** [2] - 9:7, 17:13
**running** [1] - 21:11

**S**

**sale** [1] - 4:16
**San** [2] - 12:22, 20:10
**Santa** [1] - 20:10
**scheduled** [1] - 3:3
**seated** [1] - 2:11
**second** [1] - 6:25
**section** [1] - 5:6
**Section** [4] - 1:21, 5:9, 7:11, 20:12
**seek** [1] - 11:1
**seeking** [4] - 9:20, 12:7, 13:18, 20:14
**seeks** [1] - 19:22
**seem** [2] - 7:5, 12:12
**selection** [8] - 12:20, 16:20, 16:23, 22:24, 23:1, 23:3, 23:9
**sense** [1] - 13:8
**separate** [1] - 15:2
**September** [1] - 15:11
**serves** [1] - 4:12
**service** [3] - 5:3, 5:8, 5:12
**Service** [5] - 5:6, 5:9, 7:13, 8:10, 16:23
**services** [2] - 4:24, 5:19
**Services** [2] - 5:1, 7:9
**set** [4] - 6:2, 18:13, 21:12, 24:9
**several** [3] - 4:19, 4:22, 16:19
**shall** [9] - 3:22, 19:23, 20:3, 20:7, 20:9, 20:20, 20:23, 21:5, 21:8
**Sheppard** [1] - 2:7
**SHEPPARD** [1] - 1:17
**Shore** [1] - 23:2
**short** [1] - 16:22
**show** [1] - 10:12
**sign** [1] - 16:5
**signed** [2] - 16:24, 23:12
**signs** [1] - 11:21
**silent** [1] - 4:9
**Silver** [1] - 4:24
**similar** [1] - 8:5
**simple** [4] - 8:22, 13:18, 17:15, 18:2
**simplest** [1] - 9:14
**simply** [2] - 8:10, 17:3
**sit** [1] - 7:22
**situations** [1] - 8:5
**six** [2] - 9:13, 11:13
**six-month** [1] - 9:13
**small** [1] - 8:25
**software** [3] - 5:4, 5:17, 17:12
**solved** [1] - 15:25
**sophisticated** [6] - 9:7, 9:16, 16:5, 16:13, 21:11
**sought** [3] - 4:8, 4:20, 10:23
**SOULE** [1] - 1:21
**Soule** [3] - 1:23, 24:4, 24:15
**specific** [5] - 3:13, 4:6, 19:24, 19:25, 20:16
**specifically** [5] - 4:3, 7:12, 8:10, 21:2, 22:9
**speculative** [1] - 19:19
**SPENCER** [1] - 1:14
**Spencer** [1] - 2:5
**spent** [1] - 5:21
**SSA** [3] - 5:2, 5:6, 5:8
**staff** [1] - 9:9
**started** [3] - 10:17, 15:5, 15:16
**State** [1] - 1:9
**state** [7] - 3:6, 3:9, 3:10, 10:17, 12:9, 12:13
**statement** [1] - 18:12
**States** [1] - 24:5
**states** [3] - 3:18, 3:21, 4:25
**STATES** [2] - 1:1, 1:12
**stating** [1] - 23:6
**Station** [1] - 21:23
**status** [2] - 4:25, 11:3
**statute** [1] - 3:17
**Stearns** [1] - 18:16
**stenographically** [1] - 24:8
**steps** [1] - 20:24
**still** [1] - 11:4
**stop** [1] - 11:4
**straight** [1] - 4:15
**Street** [1] - 1:9
**struck** [1] - 17:5
**stuff** [1] - 17:19
**subject** [2] - 3:14, 22:1
**submit** [1] - 6:17
**submitted** [3] - 18:10, 20:7, 20:20
**Subscription** [2] - 5:1, 7:9
**subscription** [1] - 5:3
**substantial** [3] - 10:5, 15:24, 23:8
**substantive** [1] - 18:20
**successful** [1] - 21:11
**suggest** [1] - 11:16
**suggested** [1] - 12:21
**suggesting** [1] - 10:3
**suggestion** [1] - 17:17
**suit** [6] - 4:13, 10:7, 10:15, 11:9, 11:18, 13:14
**suite** [1] - 14:23
**sum** [1] - 3:24
**Supp** [1] - 21:4
**supplemental** [1] - 14:25
**support** [2] - 4:24, 18:10
**supposed** [2] - 9:16, 16:16
**Supreme** [2] - 16:3, 17:2
**system** [1] - 13:20
**Systems** [1] - 18:15

**T**

**Technologies** [1] -

23:4
**teleconference** [1] - 20:4
**term** [2] - 5:8
**Term** [1] - 5:9
**termination** [1] - 14:15
**Terms** [4] - 5:6, 7:13, 8:9, 16:22
**terms** [3] - 5:11, 8:24, 22:11
**testimony** [1] - 24:7
**THE** [25] - 1:1, 1:11, 2:1, 2:3, 2:10, 6:12, 6:19, 7:2, 7:7, 7:14, 8:6, 8:18, 11:2, 11:19, 12:15, 12:18, 13:16, 14:5, 14:13, 17:6, 18:5, 18:8, 23:15, 23:17, 23:18
**then-judge** [1] - 23:5
**therefore** [3] - 3:18, 5:15, 18:21
**they've** [4] - 9:11, 10:1, 10:11, 11:12
**thinking** [1] - 4:24
**Third** [4] - 16:3, 17:3, 18:16, 23:1
**third** [1] - 7:1
**thorough** [1] - 18:9
**thousand** [1] - 10:25
**three** [3] - 14:24, 16:15, 17:21
**Title** [1] - 1:20
**titled** [1] - 5:6
**today** [2] - 9:9, 14:20
**TOS** [8] - 5:7, 7:8, 7:10, 8:20, 19:20, 20:13, 20:23, 22:11
**total** [1] - 10:24
**Tramper** [1] - 21:6
**transcript** [1] - 24:7
**transfer** [6] - 2:18, 6:16, 6:25, 16:2, 18:19, 23:6
**treat** [1] - 8:15
**Trenton** [1] - 1:9
**tried** [3] - 10:1, 10:8
**true** [6] - 1:20, 19:1, 19:5, 19:15, 19:18, 24:7
**try** [5] - 7:15, 9:14, 11:17, 22:12, 23:11
**trying** [5] - 8:22, 15:11, 15:12, 15:18, 16:7
**two** [1] - 17:5
**Twombly** [3] - 19:9, 19:13, 19:19
**typical** [1] - 7:21

## U

**U.S** [3] - 1:8, 19:10, 19:14
**U.S.1** [1] - 23:2
**U.S.C** [6] - 1:20, 2:19, 3:7, 3:16, 3:21, 23:7
**ultimately** [3] - 5:23, 5:25, 21:13
**unambiguous** [1] - 22:5
**unbilled** [1] - 14:11
**unconscionability** [2] - 16:8, 16:11
**under** [6] - 3:16, 3:17, 5:2, 6:17, 7:11, 17:2
**understandable** [1] - 17:11
**understood** [1] - 11:19
**United** [1] - 24:5
**UNITED** [2] - 1:1, 1:12
**unless** [1] - 16:5
**unpaid** [1] - 14:9
**unrepresented** [1] - 11:20
**unusual** [1] - 16:6
**upgrade** [1] - 9:6
**uses** [2] - 20:23, 21:5
**utilize** [1] - 4:23

## V

**valid** [2] - 23:2, 23:3
**value** [1] - 3:24
**various** [2] - 4:16, 21:12
**vendor** [3] - 14:20, 15:1, 15:13
**vendors** [3] - 16:19, 21:12, 21:13
**venue** [3] - 2:18, 16:23, 17:1
**Venuto** [1] - 3:24
**VENUTO** [1] - 3:24
**Vernon** [1] - 21:22
**versus** [1] - 18:15
**video** [1] - 20:4
**view** [2] - 7:1, 15:8
**violation** [1] - 4:4
**Vogt** [1] - 21:6
**Vogt-Nem** [1] - 21:6

## W

**wait** [1] - 17:17
**warranty** [1] - 4:5
**welcome** [1] - 2:3
**Westlaw** [2] - 3:25, 21:19
**whole** [1] - 14:23
**witnesses** [2] - 12:25, 13:1
**Woodbridge** [1] - 1:15
**word** [1] - 21:5
**words** [1] - 20:23
**writing** [2] - 9:15, 10:6
**written** [3] - 19:24, 20:15, 22:11
**wrote** [1] - 13:9

## Y

**York** [1] - 1:18
**yourselves** [1] - 7:16

## Z

**Zapata** [1] - 23:2